Please call the next case. Good afternoon. If it pleases the court, my name is Stephen Salk and I represent the defendant Appelant. First of all, I want to apologize to the court in preparation for today. I saw that there were numerous errors in my citations to the record. I apologize to counsel as well. I realize what we did wrong. And rest assured, I'm embarrassed by it. I'm sorry it will never happen again. With your permission, as I go through my argument, I will make some references to the record with the appropriate citations. The circuit court in this case, Judge Brennan, modified the award of the commission. The circuit court took away the award of prospective medical to wit a right shoulder distal clavicle resection and subacromial decompression. The circuit court also found that medical bills that had been awarded by the commission were against the manifest weight of evidence. Simply put, the circuit court reweighed the evidence, substituted its judgment for the commission. The court ruled that Dr. Nam's diagnosis was incorrect based on medical imaging in the record. The court based its ruling on Dr. Heller's, the IME's, position and testimony and findings. Yet Dr. Heller never examined any of the diagnostic films and Dr. Nam's opinions, as I'll outline, were not contrary to the evidence, not contrary to the record. And the commission's, I'm asking the court today to reinstate the commission's award as supported by the manifest weight of evidence. And the small argument in the case is the commission did find that the Respondent's conduct was vexatious, but failed to award, it awarded 19K and section 16 penalties, but failed to award 19L penalties. I want to get to that and get it out of the way. Is it possible for a person to get 19K penalties, section 16 penalties, and not get 19L penalties? Is that possible? It seems to be the practice sometimes of the commission, but in my humble opinion, it violates the statute and the case law. Well, you've got a lower standard for obtaining the 19L. Right. 19L is in the nature of a late fee. Right. It occurs to me the way the statute is written, if you get 19K, you've got to get 19L. That's what I'm saying, because it says shale. There's no way around it. It says the statute says shale. So if they find the higher standard of conduct, it's axiomatic. The lower standard must exist. Right. That's my argument. So I'm not going to repeat it. In this case, the defendant, Petitioner Serrano, was a 19-year-old young man who worked in a chicken processing plant. He worked there for a couple of months. His job was as a laborer. He was crating and packaging chicken. He lifted crates 25 to 140 pounds. He had no history of injury, no prior problems. The mechanism of accident, he was about 6 feet tall, and he stacked his crates 6 feet high. With his arms outstretched in front of him to stack a crate, which weighed 75 pounds, 6 feet high. He swung the crate, and he swung it on top of other crates, and he felt a pop in his shoulder. Now, Dr. Nam testified that the mechanism of injury at his deposition, pages 585 to 586, that by swinging the crate upwards, and the upward force of his arms, and the downward force of the crate, 75 pounds, dislocated his shoulder, which was the mechanism of the accident. He had immediate pain, was found to be by a supervisor not to be working regularly, and he was sent by his employer immediately that day to an occupational clinic. He complained of right shoulder pain, as recorded by Dr. Wright on page 160 of the record, and 8 to 9 out of 10, and it's recorded that he claims, plaintiff claims, he feels a bump on his shoulder. So clinically, we have evidence of that separation, the distal clavicle being elevated slightly, as of the date of the accident. The only thing that Dr. Wright noted was that there was an x-ray that was, quote, negative for gross fracture. Now, that radiology report is not part of the record. We subpoenaed Dr. Wright's records. He didn't tender that x-ray. It's not part of the record. No doctor ever saw the x-ray. The only thing we know about x-ray number one is that it was negative for gross fractures, and we know that the petitioner had complaints of the bump on his right shoulder from day one and pain in the right shoulder. There was an MRI on 116.09 of the right shoulder. Dr. Nam testified that the MRI was abnormal, that there was fluid swelling along the right AC joint line, bony density along the AC joint line, and increased signal. He testified that that, in his opinion, was evidence of an acute ligamentous injury, and he testified unequivocally that when he reviewed the MRI film, he saw the fluid and he saw the joint separation. Significantly, Dr. Heller never reviewed the MRI film. I'd like to briefly quote his testimony. This is page 648 on the record on my cross-examination of Dr. Heller. Can you show me where in the reports or tell me where in the reports there's any indication that you ever reviewed any x-rays? I'm asking Dr. Heller. He says, I don't see any reference to any x-rays. Question. So then it would be a fair conclusion that you did not review any x-rays in this case. Well, I certainly did not review any x-ray films. I didn't review any films, MRIs, or x-rays, and I don't make any reference to x-ray reports. So I don't think I reviewed those either. This still goes to the finest. You've got to claim it here that he had no prior shoulder symptoms, and had not, to any of his treating physicians, reported any improvement after months of treatment, and had, by July 13, 2009, an x-ray that showed a bone fragment in the AC joint and an MRI that indicated there was inflation in the shoulder tendon. And that's what the commissioner relied on in determining that there was a causal connection in rejecting Dr. Heller's opinion. Isn't that just simply what happened? That, and in addition, they also found the petitioner credible, the fact that he found the prominence on day one. Dr. Nahn testified that in his examinations, every time he examined the petitioner, he, in fact, saw the prominence. So then I take it that your conclusion is that the decision of the commission resting upon bad evidence was not against the manifest weight of the evidence, and the circuit court had absolutely no right to substitute its judgment of the weight of evidence for that of the commission. The bottom line is that's the short of my argument. And that 19L is virtually mandatory if you award 19K and 16. That's correct. I mean, I was prepared to go through each x-ray and talk about Dr. Nahn's interpretations and where it is in the record, but that's basically my argument. I think that the circuit court reweighed the evidence, rejected the commission's findings and credibility and reasonable inferences. And I don't think that it was clear. I think it was supported, and that's my argument. So unless there's any questions, I don't know. I think in many cases what we run into is a situation where when these cases come up for review for the first time in the circuit court, many times circuit judges who aren't familiar with these cases don't understand that there's no right answer when you deal with manifest weight. The question that has to be asked is, is there any credible evidence in the record that supports the decision of the administrative agency? And the answer to that question is yes. You must confirm them, regardless of what you would have done with that same evidence if you've been in the trial or failed. Well, I wouldn't have said that, but that is what you're saying is my belief as to what happened, and that is my argument that the commission's decision is supported by evidence, is not contrary to the law, should have been affirmed. For those reasons, I'll ask this Court to reinstate the commission's decision. Thank you, counsel. You'll have time in reply. Pardon me? You'll have time in reply. Five minutes. Counsel, you may respond. Good afternoon, Your Honors. May it please the Court. Scott McCain on behalf of the Appellee Cook Foods. At the outset, I'd just like to establish one thing. Two things, actually. The circuit court didn't base its rulings on anything Dr. Heller said. Moreover, I don't think the commission actually found the petitioner credible. That's not in its decision. As the circuit court, in my opinion, correctly noted, they found that the commission's decision was against the manifest weight of the evidence based upon Dr. Nam's opinions, which they found to be contrary to the record and inconsistent with the treatment history. And I would submit to you that there are not sufficient facts to support the commission's that Dr. Nam's opinions were credible. Well, I'm sure you're well of that well-settled body of law that says it's within the sole province, sole province of the commission, to judge the credibility of the witnesses. Yes, sir. So how in any manner can the circuit judge substitute his judgment for the commission on the credibility of the witnesses any more than we could ever, as an appellate court, substitute our judgment for the trier effect on the credibility of the witness? That's a pretty sacred rule, isn't it? Agreed. Yes, it is. But I don't agree. What happened here? I don't think that the Honorable Judge Brennan substituted her judgment. I think there still has to be sufficient facts to support the finding of fact of one's credibility. Well, he was asymptomatic prior to the injury, wasn't he? Yes. And he did, throughout the treatment, report that he wasn't getting much improvement from the therapeutic treatments, didn't he? I would say that that's fair, yes. Okay. And there was an X-ray of 12-1309 that showed that he had a bony fragment of the AC joint and an MRI that indicated he had inflammation of the shoulder tendon, wasn't there? Well, that MRI was in July, which is six months after the accident. Correct. But I would like to make one comment relative to the MRI scan. With respect to counsel, I believe he may have misstated something inadvertently. It's virtually unrebutted in this case that that MRI scan revealed an intact and unremarkable AC joint. In fact, Dr. Nam's own explanation of what an AC joint separation indicates proves that that MRI didn't show that there was an AC separation at that point. No, but it did show a bony fragment of the AC joint, did it not? That's the X-ray in July. Yes. So Dr. Anderson, or excuse me, Dr. Nam testifies that an AC joint separation involves injuries to the ligaments connecting the clavicle and the scapula. However, he goes on to acknowledge that the MRI scan did not show evidence of a ligament injury. And there has been, you gentlemen have mentioned the X-ray of July 13, 2009. There were two X-rays prior to that date. Counsel alluded to one on January 12, 2009 that was read as negative. And there's another one, perhaps more importantly, taken on February 7, 2009, when the petitioner goes to see Dr. Fuhlman at Markey Medical. Not only was the X-ray negative, but an examination of the right shoulder on that time was negative as well. The record, in and of itself, is replete with evidence that Dr. Nam himself indicated is inconsistent with his diagnosis. He specifically stated that the absence of deformity, the absence of swelling, and the absence of a prominence is inconsistent with his diagnosis. So then the circuit court, you're arguing, was justified in rejecting the testimony of Nam, and yet doesn't violate the rule against substituting its diagnosis.    But that's what you're arguing about, is the judge's judgment on the credibility of Nam. You're dancing around the issue because that's exactly what the trial judge did. Okay. And if the Commission believes Nam, if you look at the cases for any reason, and believes the credibility and efficacy of Nam's testimony, the trial judge can't throw that out. Well, I believe there still has to be sufficient factors to support that their finding of credibility is accurate. But who makes that determination? Well, you know, the Commission did in this case. I guess I'm struggling with how you get around the argument that she basically substituted her judgment for that of the Commission. Respectfully, I would submit to the Court that she found that there were not sufficient facts to warrant the Commission's opinion that Dr. Nam was credible. You're really arguing against the Commission's finding, aren't you? Yes. It was against the manifest weight of the evidence. Yes. All right. What about the penalties? Again, we danced around it earlier. But the point of the question is if there's a finding under 19K, okay, you have a vexatious and unreasonable delay, how could that finding be accurate and not have a violation of L, that there's a delay in payment? Isn't it subsumed by the grader? I think it is, and I did not find any cases out of the contrary. I appreciate the candid mission of this. Yes. But, you know, the one caveat I will add to that is 19L does request, it does mandate that there be a written demand for payment of the benefits. And here, if you assume that the 19B filing wasn't a written demand, there was no written demand. In addition, the request for medical bills that's in the record, payment of medical bills, the actual medical bills are not connected to that written demand. Okay. So the commission... He did file a petition for penalties for nonpayment of bills. Yes. But wouldn't that be a written demand for payment? I don't have an answer to that. I would submit to the Court that the actual first medical evidence of prominence in the right shoulder doesn't come until March 16, 2009. That's when he first goes to see NOM. He claims to have felt a bump in his shoulder from the accident going forward, but in fact that's not in any of the medical records until March 16, 2009. With respect to the medical bills awarded, we're talking about 150 physical therapy and chiropractic sessions at Marquis Medical over the course of a year. In this case, the commission ignored salient evidence and they manufactured their own evidence. Both Dr. NOM and Dr. Heller testified that chiropractic treatment was unnecessary. In addition, Dr. NOM acknowledged, and I quote, that he didn't really know that physical therapy at Marquis Medical was necessary and related. And to further that point, Dr. NOM didn't even review the records from Marquis Medical. So, you know, based upon what I've said, I would respectfully request that this Court affirm the judgment of the circuit court. Thank you. Thank you, counsel. I'll wait for any further rebuttals. Thank you, Your Honor. Very good. Thank you, counsel, both. This matter will be taken under advisement. This position shall issue. Please call the next case.